# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| WILLIAM E. BABER,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST REPUBLIC GROUP, L.L.C.,<br>and EVAN PARKS,<br><br>Defendants. | No. C 06-3076-MWB<br><br>**MEMORANDUM OPINION AND<br>ORDER REGARDING<br>DEFENDANTS' MOTION TO<br>COMPEL ARBITRATION AND TO<br>STAY PROCEEDINGS** |

––––––––––––––––––––

In this action, originally filed in the Iowa District Court for Webster County on or about October 20, 2006, plaintiff William E. Baber asserts various claims against defendant First Republic Group, L.L.C. (First Republic), a so-called "introducing broker" with which Baber had opened a securities brokerage account, and Evan Parks, an account executive for First Republic, based on allegedly improper overcharges totaling $147,021, resulting from marking up or marking down the price of stocks traded by Baber and diverting the difference between the stock price and the marked-up or marked-down price to the defendants. Baber's specific claims are the following: common-law fraud in **Count I**; violation of the Iowa Securities Act in **Count II**; breach of contract in **Count III** (against First Republic only); breach of the covenant of good faith and fair dealing in **Count IV** (against First Republic only); breach of fiduciary duty in **Count V**; and misappropriation and/or theft of funds in **Count VI**. The defendants removed this action to this federal court on November 17, 2006, alleging diversity jurisdiction.

In lieu of answering Baber's Complaint, the defendants filed on December 27, 2006, the Motion To Compel Arbitration And To Stay Proceedings (docket no. 7) now before the court. In their motion and supporting brief, the defendants argue that they are entitled to compel arbitration of Baber's disputes with them pursuant to an arbitration clause in an agreement between Baber and BNY Clearing Services, L.L.C. (BNY), a so-called "clearing broker," which was actually responsible for administering Baber's brokerage account with First Republic, because First Republic and Parks are, as a matter of circuit law, agents of BNY and third-party beneficiaries of the agreement between Baber and BNY. In support of this contention, the defendants cite *Nesslage v. York Securities*, 823 F.2d 231 (8th Cir. 1987). They also contend that Baber is obligated to arbitrate his disputes, because BNY is an indispensable party to this dispute.[1] Therefore, they seek an order compelling arbitration and staying proceedings pending completion of arbitration. Baber resists on the ground that the *Nesslage* decision upon which the defendants rely states only certain fact-driven exceptions to the general rule that "introducing brokers" and their account representatives are *not* agents of "clearing brokers" nor third-party beneficiaries of a customer's agreement with a "clearing broker." Baber also contends that BNY is not an indispensable party, because his claims against First Republic and Parks are independent of any claim he may have against BNY and because complete relief, without possibility of inconsistency, can be granted in this case against the present defendants alone.

---

[1]The defendants also argue, in passing, that Baber has failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. However, the defendants did not frame their motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, so that the court does not believe that such a contention is properly before it on a motion to compel arbitration.

2

The court begins its analysis of the defendants' contentions with an examination of precisely what the *Nesslage* decision holds. In *Nesslage*, the district court granted in part and denied in part a motion to compel arbitration by a stock brokerage firm, York Securities, which was an "introducing broker" like First Republic here, and its registered account representative, Samson, of claims against them by investors, the Nesslages, based on alleged mishandling of the Nesslages' account. *Nesslage*, 823 F.2d at 232. The district court found, *inter alia*, that the Nesslages, York Securities, and Samson intended that a margin agreement between the Nesslages and a clearing broker, Q & R Clearing Corporation, which included an arbitration provision, would govern their brokerage relationship, even though York Securities and Samson were not parties to the margin agreement, and that York Securities and Samson could, therefore, enforce the margin agreement and its arbitration provisions. *Id.* at 233. Although the district court granted the defendants' motion to compel arbitration on several claims, the court determined that the Nesslages' federal securities claim was not arbitrable, and the defendants appealed denial of arbitration on that claim. *Id.* at 232.

The part of the *Nesslage* decision upon which the defendants here rely is a model of conciseness, but not necessarily a model of clarity. It states the following:

> The Nesslages argue the district court erred in finding that York Securities and Samson could enforce the margin agreement and its arbitration provision against them. The Nesslages argue that because York Securities and Samson were not parties to the margin agreement, they did not agree with York Securities and Samson to arbitrate their disputes and thus had no duty to arbitrate. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1352, 4 L. Ed. 2d 1409 (1960). We hold the district court correctly determined that York Securities and Samson could enforce the margin agreement, and the arbitration provision

3

contained therein, against the Nesslages, even though York and Samson were not parties to the margin agreement. York Securities and Samson were third-party beneficiaries of the margin agreement between the Nesslages and Q & R Clearing Corp.; York Securities was the disclosed agent of Q & R Clearing Corp., the clearing broker. *See Okcuoglu v. Hess, Grant & Co.*, 580 F. Supp. 749, 750-52 (E.D. Pa. 1984); *cf. Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985, 990-92 (S.D.N.Y. 1984) (holding that trading broker could enforce agreement between its customer and clearing broker). *But see Ahn v. Rooney, Pace Inc.*, 624 F. Supp. 368, 370 (S.D.N.Y. 1985) (holding that introducing broker could not enforce agreement between customer and clearing broker).

*Nesslage*, 823 F.2d at 233-34.

Although not necessarily a model of clarity, this court cannot read the decision in *Nesslage* to stand for the proposition that *all* "introducing brokers" and their agents are, as a matter of law, agents of "clearing brokers" handling a customer's securities or that *all* "introducing brokers" and their agents are, as a matter of law, third-party beneficiaries of an agreement, including any arbitration provision, between a customer and the "clearing broker," as the defendants here contend. Rather, the only reasonable reading of the decision in *Nesslage* is that it was a fact-based decision that relied on fact-based authorities.

More specifically, in *Nesslage*, the appellate court noted that the district court had made a fact-based determination that the Nesslages, York Securities, and Samson *intended* that a margin agreement between the Nesslages and Q & R Clearing Corporation, which included an arbitration provision, would govern their brokerage relationship, even though York Securities and Samson were not parties to the margin agreement, and that York Securities and Samson could enforce the margin agreement on the basis of that intention. *Id.* at 233. The appellate court then held that "the district court correctly determined that

4

York Securities and Samson could enforce the margin agreement, and the arbitration provision contained therein, against the Nesslages, even though York and Samson were not parties to the margin agreement." *Id.* The appellate court did not state that it was affirming the district court's determination, but on different grounds and as a matter of law; rather, the appellate court simply affirmed the district court's determination. *Id.*

Moreover, in explaining, further, that the introducing broker and its agent were agents of the clearing broker and third-party beneficiaries of the agreement between the customer and the clearing broker, the appellate court relied on three fact-driven cases, two finding that an introducing broker could enforce an agreement between a customer and a clearing broker and one finding that the introducing broker could not enforce such an agreement. In *Okcuoglu v. Hess, Grant & Co.*, 580 F. Supp. 749 (E.D. Pa. 1984), the first decision relied on by the court in *Nesslage*, the district court stated that whether the parties had an agreement to arbitrate "'depends upon the intent of the parties as it appears from the language used, its context within the instrument, and the circumstances surrounding its formation and execution.'" *Okcuoglu*, 580 F. Supp. at 750 (quoting *Bruno v. Pepperidge Farm, Inc.*, 256 F. Supp. 865, 868 (E.D. Pa. 1966)). The court noted that, "[e]ssentially, the court must determine whether there was a clear meeting of the minds on the issue," and that the "lynchpin of the analysis" was "whether the facts and circumstances surrounding the formation and execution of the document demonstrate that there was mutual assent to arbitration." *Id.* The court found that the customer agreement between the investor and the clearing broker, which contained an arbitration clause, was not signed by the introducing broker's representatives, but nevertheless, "unquestionably, by their conduct all parties adopted the terms thereof governing the relationships." *Id.* Furthermore, the court explained,

5

After review of the evidence presented, the court concludes and agrees with Hess Grant [the introducing broker] that, under the Pershing option agreement, it was Pershing's [the clearing broker's] corresponding firm and agent for all plaintiffs' options transactions. As introducing broker, Hess Grant was agent both to plaintiff and Pershing. Although plaintiffs have not sued Pershing, the transactions in question flowed or were to flow through that firm. The above enumerated options transactions cannot be said to exclude Pershings' clearing or execution activity in plaintiffs' accounts. It is yet possible that Pershing might be brought into the subsisting disputes as a necessary party. So long as that possibility exists, Pershing has the right to have any and all disputes as to options transactions it handled submitted to arbitration, including those between introducing broker and customer occurring during the period of its clearing agency agreement. In addition, by approving plaintiffs for options trading through Pershing, Hess Grant acted as a disclosed agent for Pershing. It follows that the arbitration provision in the Pershing Customer Agreement was applicable to options transactions disputes arising between plaintiffs and Hess Grant as Pershing's agent. Mr. Okcuoglu had a clear understanding that any dispute involving Pershing, directly or indirectly, would be subject to arbitration. Accordingly, as to Counts I through VI, defendants' motion to stay proceedings pending arbitration is granted.

*Okcuoglu*, 580 F. Supp. at 751-52. Thus, the decision in *Okcuoglu* turned on fact-based determinations of the parties' intent and the actual relationships between the introducing broker, the clearing broker, and the investors to determine that the introducing broker was the agent of the clearing broker.

The decision in *Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985 (S.D.N.Y. 1984), applied an equally fact-driven analysis to the question of whether an introducing

6

broker was the third-party beneficiary of a contract between a customer and a clearing broker;

> A third party may sue as a beneficiary to a contract if the parties intended their performance to benefit the third party. *Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 655, 357 N.E.2d 983, 985-86, 389 N.Y.S.2d 327, 330 (1976). The Restatement Second of Contracts takes the position that, "unless otherwise agreed," if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties," the beneficiary will be protected when "the circumstances indicate that the promissee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302. *The customer agreement does not explicitly grant or deny Mabon a right to enforce any of its terms. The manner in which Cauble's trading account was handled, however, demonstrates that performance of Cauble's contractual obligations under the Goodman customer agreement was to be monitored and controlled by Mabon.* At the time of the agreement's execution, Cauble and Goodman were both aware of Mabon's control of the functioning of Cauble's account. Leon Pollack's letter to Cauble on April 20, 1982 delineated the basic terms of the relationship between Cauble and Mabon. Mabon was to have supervisory powers over the Cauble account-including authority to collect margins for Goodman-and to have direct, daily contact with Cauble, while Goodman was to do no more than clear trades. Where performance is to be rendered directly to a third party under the terms of an agreement, that party must be considered an intended beneficiary. *See Goodman-Marks Associates, Inc. v. Westbury Post Associates,* 70 A.D.2d 145, 148, 420 N.Y.S.2d 26, 28-29 (2d Dep't 1979) (per curiam).
>
> If Mabon was an intended beneficiary of those terms of the customer agreement governing the management of property in the customer account and margin calls, it should also be regarded an intended beneficiary of the liquidation provision.

7

> Goodman, in relying on Mabon for collecting margin payments, had a clear interest in providing Mabon with the power to make margin calls on Cauble and to otherwise determine whether any shortfall in margin payments merited liquidation. Mabon's interest in having the power to liquidate is even more obvious; any loss due to delayed liquidation of Cauble's account might well have ultimately fallen on Mabon, because of its separate obligations to Goodman. In light of Mabon's central position in the Cauble/Mabon/Goodman relationship, Mabon should be recognized as a third party beneficiary of Goodman's customer agreement, including the right to liquidate Cauble's account, without demand or notice, for failure to maintain adequate margin. *See Okcuoglu v. Hess, Grant & Co., Inc.*, 580 F. Supp. 749, 751-52 (E.D. Pa.1984) (broker managing account may rely on arbitration clause in customer's agreement with clearing house).

*Cauble*, 594 F. Supp. at 991-92 (emphasis added).

Neither *Okcuoglu* nor *Cauble* states or stands for a black-letter legal rule that introducing brokers are agents of clearing brokers or third-party beneficiaries of contracts between clearing brokers and customers, and in citing those decisions in support of its conclusion in *Nesslage*, the Eighth Circuit Court of Appeals certainly did not imply that there is such a black-letter rule. The third decision cited by the Eighth Circuit Court of Appeals in *Nesslage* for a contrasting result confirms that the determinations of agent and third-party beneficiary status are fact-driven. *See Ahn v. Rooney, Pace, Inc.*, 624 F. Supp. 368, 370-71 (S.D.N.Y. 1985) (distinguishing *Okcuoglu* and *Cauble* on the ground that those cases involved particular types of brokerage transactions, but further concluding that, even were such a distinction unavailable, the court would reach a different conclusion based on lack of evidence that the introducing broker and clearing broker were anything but entirely independent entities and the lack of evidence of consent by a principal that the other act on its behalf, and the relationship of the parties was insufficient to demonstrate

8

a third-party beneficiary situation). In short, there is no black-letter rule in this Circuit that introducing brokers are agents of clearing brokers or that introducing brokers are third-party beneficiaries of agreements between customers and clearing brokers. Instead, under the authority on which the defendants' rely, the determination of an introducing broker's ability to enforce the arbitration provisions of a customer's agreement with a clearing broker is a fact-driven question.

In the case now before this court, the defendants have submitted Baber's agreement with BNY, the clearing broker, including the text of the arbitration clause, but they have pointed to nothing in the contract or the arbitration clause that states or necessarily suggests that the parties intended the arbitration agreement to govern the relationship among Baber, First Republic, Parks, and BNY. *See Nesslage*, 823 F.2d at 233 (affirming the district court's determination that the Nesslages, York Securities, and Samson intended that a margin agreement between the Nesslages and a clearing broker, Q & R Clearing Corporation, including the arbitration provision, would govern their brokerage relationship, even though York Securities and Samson were not parties to the margin agreement). Indeed, Baber has submitted an affidavit representing that he certainly had no such intent. *See* Plaintiff's Resistance, Exhibit A, ¶ 6. The defendants have not submitted any agreement between First Republic and BNY demonstrating that those parties agreed that First Republic was BNY's agent. Certainly, nothing in the record so far "discloses" First Republic or Parks as an agent of BNY. *Compare Okcuoglu*, 580 F. Supp. at 751-52 (the introducing broker was a "disclosed" agent of the clearing broker). Also, as Baber points out, the language defining the scope of the arbitration clause at issue here is different from the language defining the scope of the arbitration clause in *Nesslage*. In *Nesslage*, the court construed the arbitration clause to read, "'[a]ny controversy arising out of or relating to [the account] . . . shall be settled by arbitration. . . .'" *Nesslage*, 823

Case 3:06-cv-03076-MWB   Document 15   Filed 02/21/07   Page 9 of 13

F.2d at 232 (quoting the contract with emendations by that court). Here, the arbitration clause is much narrower, providing not for arbitration of any controversy "arising out of or relating to" the account in question, but only to "any claim, dispute or controversy between us or involving any affiliate of BNY Clearing Services, L.L.C.," Defendants' Exhibit A, ¶ 25, so that a dispute *between BNY and Baber*, not a dispute between Baber and some other party concerning his account, falls within the scope of the arbitration provision. Thus, First Republic and Parks do not fall within the scope of entities who were necessarily intended as beneficiaries of the agreement.

On the present record, the court concludes that the facts and circumstances do not establish that First Republic and Parks are agents of BNY or that they are third-party beneficiaries of the contract between BNY and Baber, such that they are entitled to enforce the arbitration clause in the BNY agreement. Under well-settled circuit law, the first step in analysis of whether or not a party may compel arbitration is whether a valid agreement to arbitration exists. *See, e.g., Lipton-U. City, L.L.C. v. Shurgard Storage Ctrs., Inc.*, 454 F.3d 937 (8th Cir. 2006) (citing *United Steelworkers of Am. v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005), in turn citing *United Steelworkers of Am. v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000)). First Republic and Parks have failed to establish this first step, because First Republic and Parks are not parties to the agreement containing the arbitration clause.

First Republic and Parks nevertheless argue that the court should compel arbitration, because BNY, a party to the arbitration agreement, is an indispensable party to this litigation. Rule 19(a) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> A person who is subject to service of process and whose
> joinder will not deprive the court of jurisdiction over the

10

> subject matter of the action shall be joined as a party in the
> action if (1) in the person's absence complete relief cannot be
> accorded among those already parties, or (2) the person claims
> an interest relating to the subject of the action and is so
> situated that the disposition of the action in the person's
> absence may (i) as a practical matter impair or impede the
> person's ability to protect that interest or (ii) leave any of the
> persons already parties subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations by
> reason of the claimed interest.

FED. R. CIV. P. 19(a). As the Eighth Circuit Court of Appeals has explained, "Subsection '(a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among the current parties.… The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person.'" *Gwartz v. Jefferson Mem. Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (quoting *LLC Corp. v. Pension Benefit Guar. Corp.*, 703 F.2d 301, 305 (8th Cir.1983)). Under subsection (a)(2), if the court determines, from a practical perspective, that a party may have an "interest" in the litigation, even though absent from it, then the question is whether that party's interest will, as a practical matter, be impaired or impeded, or that an existing party may be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *Id.* at 1429.

The defendants argue that BNY is an "indispensable" or "necessary" party, because it appears that Baber's fraud claims are based on account notifications actually sent to Baber by BNY. On the present record, however, the court concludes that BNY is not a "necessary" or "indispensable" party within the meaning of Rule 19(a). As to subsection 19(a)(1), as Baber points out, his claims are against First Republic and Parks, and relief can be accorded among the parties already present, even if there is some speculative possibility that he may eventually find it appropriate to pursue further litigation against

11

BNY for its part in the fraudulent handling of his brokerage account. *See id.* at 1428. Thus, it appears that Baber's contention is that BNY was merely acting as the agent of First Republic and Parks in sending the notifications containing the fraudulent representations by First Republic and Parks. Assuming that BNY has an "interest" in this litigation, as required to be an indispensable party under subsection (a)(2), it is difficult to see how BNY's interest would be impeded, where Baber claims here that First Republic and Parks, not BNY, are responsible for the improper handling of his account, and there is no realistic possibility that *First Republic or Parks* will be subject to incurring double, multiple, or otherwise inconsistent obligations, even if Baber *also* has a claim against BNY, because there is no showing that BNY would have a claim against First Republic or Parks that could result in double or multiple obligations.

The defendants argue that *Okcuoglu*, 580 F. Supp. at 751-52, stands for the proposition that, so long as there is a possibility that BNY, the clearing broker, could be joined as a party, BNY's right to compel arbitration of the present dispute is controlling. However, in *Okcuoglu*, the court concluded that the existing defendant, the introducing broker, was an agent of the clearing broker, and that the clearing broker could be joined as a necessary party. *See id.* Here, neither situation obtains, because the court concluded just above that BNY is *not* a necessary party and, further above, that there are no facts in the record at present demonstrating that First Republic or Parks was an agent of BNY. Thus, the possibility that BNY could be joined here, as a permissively joined party, is not enough to warrant compelling the parties already in this case to arbitration pursuant to an arbitration agreement to which the defendants are not parties.

12

THEREFORE, the defendants' December 27, 2006, Motion To Compel Arbitration And To Stay Proceedings (docket no. 7) is **denied** upon the present record.

**IT IS SO ORDERED.**

**DATED** this 21st day of February, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA